# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RONALD GUIDRY, #R-58604,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　**Plaintiff,**　　)
　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　)　　　**CIVIL NO. 10-938-GPM**
　　　　　　　　　　　　　　　　　)
**ILLINOIS DEPARTMENT OF** )
**CORRECTIONS**, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　**Defendants.**　)

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, an inmate currently in the Menard Correctional Center, was at all times relevant to this action housed in the Shawnee Correctional Center. Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds that some, but not all, of the claims in the complaint must be dismissed at this point in the litigation.

## FACTS ALLEGED IN AMENDED COMPLAINT

On August 29, 2010, Plaintiff was worshiping in his cell when Defendant Pender approached and began harassing Plaintiff about his religion. After a heated discussion, Defendant Pender shoved Plaintiff, causing Plaintiff to fall and injure his head and back. Plaintiff requested medical attention, but this request was denied.[1] Later that evening, Plaintiff submitted a grievance regarding the incident.

On September 1, 2010, Plaintiff was told to pack up, and he was taken to segregation. When he asked why he was being placed in segregation, he was told that Defendant Martin had ordered the move, even though Plaintiff received no disciplinary hearing. Once Plaintiff arrived in segregation, Defendant Pender took Plaintiff's property, destroyed items, and confiscated pictures and unrelated grievances while telling Plaintiff that he "should have just left it alone," referring to the grievance Plaintiff had written about Defendant Pender. Later that evening, a nurse gave Plaintiff pain pills and an ice pack for the injuries he sustained earlier.

Plaintiff was in segregation during the religious period of Ramadan, so that his food trays arrived twice a day: before sunrise and after sunset. Because Plaintiff was the only inmate in

---

[1] Plaintiff does not state to whom he made this request or who denied the request.

segregation participating in Ramadan, he was the only inmate who received his food trays at these times. Often, Plaintiff would receive food that had been "tampered with" and "digged over."

At some unspecified time later, Defendant Rightnower came to Plaintiff's cell and boasted about burning his holy book, which provoked a verbal altercation. Plaintiff later began writing out a grievance relating to this argument and left it on his desk while he was called away from his cell. When he returned, the grievance and other legal documents were gone.

On September 18, 2010, Plaintiff was issued numerous false tickets. Plaintiff attended a disciplinary hearing and was found guilty of the charges, though his witnesses were never called. Plaintiff's status was changed to segregation, though he had been held in segregation since September 1st. Plaintiff never received a statement detailing the reasons why the board found him guilty. Defendant Vaughn was a member of the board who allegedly influenced the other members to find Plaintiff guilty.

Plaintiff returned to a new segregation cell and was subjected to cold temperatures. The next day, medical staff was called because Plaintiff's core body temperature was low and he was vomiting. Plaintiff was moved to a new cell but was denied food, and pieces of his mail were confiscated. Defendant Walker was aware of this treatment but did not prevent it or rectify the situation.

On September 24, 2010, Plaintiff went before the advisory board for a hearing on more disciplinary tickets. Defendant Walker attended the hearing and allegedly told the board members that they were to find Plaintiff guilty, no matter what the evidence showed, and to designate Plaintiff for a negative transfer.

On October 9, 2010, Defendants Hunter, Pender, Rightnower, and Hughes attacked Plaintiff.

As a result of being punched, kicked, and slammed against the ground and walls, Plaintiff received injuries to an eye, a broken finger, a bruised wrist, and a knot on his forehead. Plaintiff was treated for his injuries and received medication after he complained of the pain.

**DISCUSSION**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* amended complaint into numbered counts, as set forth below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count One:  Excessive Force**

Plaintiff alleges that Defendant Pender used excessive force when he shoved Plaintiff in his cell, causing Plaintiff to fall and sustain injuries. Plaintiff further alleges that Defendants Hunter, Pender, Rightnower, and Hughes used excessive force when they attacked Plaintiff by punching, kicking, and slamming him into the walls and floor.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 130 S. Ct. at 1180, *citing Hudson v. McMillian*, 503 U.S. 1, 6 (1992). An inmate seeking damages for the use of excessive force need not establish serious

bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 130 S. Ct. at 1180 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff claims that in both of these instances, he was not resisting or causing any sort of disturbance to justify the use of force. Plaintiff alleges that the force was used specifically to cause him unjustified pain. It cannot be determined, at this time, whether Plaintiff engaged in some activity to warrant the use of force in one or both of these situations or whether the force was applied, if at all, "maliciously and sadistically." Therefore, the claims asserted in Count One cannot be dismissed at this time.

### Count Two: Medical Indifference

Plaintiff alleges that his rights were violated when his request for medical attention was denied after he was assaulted by Defendant Pender. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106; *see also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical

needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). This test is not an insurmountable hurdle for inmates raising Eighth Amendment claims.

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit requires evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm to satisfy the standard for deliberate indifference in the denial or delay of medical care. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (a disagreement with medical professionals' course of treatment does not state a cognizable Eighth Amendment claim under the deliberate indifference standard). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed that the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

Plaintiff claims that his needs for medical treatment were ignored when, after the first assault, his request for immediate medical care was denied. However, Plaintiff states in his

complaint that within 3 days he received pain pills and an ice pack. As for Plaintiff's later assault, he received treatment for those injuries as well. Plaintiff does not specify in his complaint who initially denied him medical care, but it is clear that he did receive treatment at a later date. Though a delay in medical care may raise a medical indifference claim, a 3-day delay is not a serious delay in this instance. Plaintiff did not allege that he was bleeding or even that he was in serious pain. Plaintiff stated that he had a bump on his head and bruises on his back from the assault by Defendant Pender. There is no indication that these injuries were in any way life threatening such that a 3-day delay in treatment could constitute a constitutional violation. There is no indication in Plaintiff's complaint that there was any delay in treatment after the second assault. Because Plaintiff received medical treatment after both assaults, though the first treatment was 3 days later, he has not stated a claim for deliberate indifference to medical needs. The claims asserted in Count Two are dismissed with prejudice.

**Count Three: Retaliation**

Plaintiff alleges that various Defendants retaliated against him for writing grievances. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

Plaintiff claims that he was denied due process when he initially was moved to segregation without a hearing and again during the September 18 and 24, 2010, disciplinary hearings in

retaliation for filing grievances. He further claims that he was placed in a cold cell, that he was denied mail, that someone tampered with his food, and that Defendant Walker knew all of this but failed to rectify the situation in retaliation for filing grievances. Even though these allegations may not be actionable as constitutional violations in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under §1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (*discussing Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

At issue here is whether Plaintiff experienced an adverse action or actions that likely would deter First Amendment activity in the future and whether the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the alleged retaliatory actions. *Bridges*, 557 F.3d at 551. These questions cannot be resolved at this stage of the case; therefore, the Court is unable to dismiss this the retaliation claims asserted in Count Three at this time.

### Additional Parties

There is an issue with certain parties named in the caption of Plaintiff's complaint. Plaintiff lists Illinois Department of Corrections, Gaetz, and Shawnee Correctional Center Medical Administration as defendants, but these parties do not appear anywhere else in the complaint. Pro se plaintiffs, whose complaints are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims to put these defendants on

notice of the claims brought against them so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under Federal Rule of Civil Procedure 8 if it notifies the defendant of the principal events upon which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery"). Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Because Plaintiff has not named Illinois Department of Corrections, Gaetz, and Shawnee Correctional Center Medical Administration elsewhere in his complaint, they are dismissed without prejudice for Plaintiff's failure to state a claim against them.

**Pending Motions**

On April 20, 2011, Plaintiff filed a motion for appointment of counsel (Doc. 11). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). With regard to the first step of the inquiry, Plaintiff indicates that he has made some effort to retain counsel – specifically, he has contacted the ACLU of Illinois as well as the Uptown People Law Center – and was denied representation.

With regard to the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.*; *see also Santiago*, 599 F.3d at 762-64. At this point in time, it is difficult for the Court to assess this factor. *See Romanelli*, 615 F.3d at 852 (noting infancy of case makes it impossible to make accurate determination of *pro se* litigant's ability to litigate case). Plaintiff's claims do not appear to be factually complex: he claims he was subjected to excessive force and retaliation for filing grievances. From a legal standpoint, the litigation of any constitutional claim falls within the range of complex. At this time, Plaintiff has adequately articulated his legal issues to survive the initial screening under 28 U.S.C. § 1915A. Future developments may change the Court's mind on whether counsel should be appointed. At this early stage, though, the Court concludes that Plaintiff appears to be competent to litigate his case. Therefore, Plaintiff's motion for the appointment of counsel (Doc. 11) is **DENIED** without prejudice.

Additionally, Plaintiff requests an extension of time because of an institutional lockdown. Plaintiff filed his amended complaint as directed; therefore, the Court is uncertain to what deadline Plaintiff is referring. The motion for extension of time (Doc. 13) is **DENIED** without prejudice.

### SUMMARY

For the foregoing reasons, Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, GAETZ,** and **SHAWNEE CORRECTIONAL CENTER MEDICAL ADMINISTRATION** are **DISMISSED** without prejudice from this action.

The Clerk of Court is **DIRECTED** to prepare for Defendants **PENDER, HUNTER, RIGHTNOWER, HUGHES, VAUGHN**, **MARTIN,** and **WALKER** (1) Form 5 (Notice of a

Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court file or disclosed by the Clerk.

      **IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

      Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

      Pursuant to Local Rule of the United States District Court for the Southern District of Illinois

72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter is **REFERRED** to Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: 04/27/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge